PEOPLE *v.* McELROY *et al.*

(*Supreme Court, General Term, First Department.*　April 17, 1891.)

1. ROBBERY—SUFFICIENCY OF EVIDENCE.

Upon a trial for robbery, it appeared that the prisoner seized the prosecutor by the collar as he was about to leave a drinking saloon, held him up against the jamb of the door, remarking, "I want that watch;" and, as he took it, said to a companion, "I got it;" and then immediately retreated, and secreted himself in a closet, the prosecutor being at the time drunk. *Held* sufficient to show a violent taking of the watch, and to justify a conviction of robbery in the first degree.

2. .SAME—ACCOMPLICE.

Upon a trial of A. and B. for robbery in the first degree, it appeared that the prosecutor saw them together on the street as he entered a saloon, and upon emerging from an anteroom of the saloon, a half hour afterwards, he found them in the saloon; that A. grasped him by the collar, and took his watch, remarking to B., who stood immediately behind him, "I got it;" and that they then retreated, and hid themselves together in a closet. *Held*, that B., by his conduct and presence, aided and encouraged A., and was properly convicted of robbery, jointly with him

Appeal from court of general sessions, New York county.

Indictment against William McElroy and Edward Ryan for robbery. Defendants appeal from a judgment entered upon the verdict of a jury, finding them guilty of robbery in the first degree.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*Purdy & McLaughlin*, for appellants. *De Lancey Nicoll*, (*Henry B. B. Stapler*, of counsel,) for respondent.

VAN BRUNT, P. J. The appellants were indicted for robbery in the first degree, which charged them jointly with the taking, by violence, of a watch worth $23 from the person of one William Cavanagh. They were jointly tried and convicted, and now appeal from the judgment against them. No questions are raised upon this appeal, except that the evidence was not sufficient to warrant a verdict against either defendant because of its unsatisfactory character, so far as the complaint was concerned; and that the evidence was not sufficient to warrant a verdict against McElroy; and that, ever taking all the evidence offered by the prosecution as true, it had no tendency to prove that he did anything to aid or abet in the robbery, or that he counseled, commanded, or induced Ryan to commit the crime. The facts of the case as they appear by the record seems to be correctly stated by the district attorney in his brief, as follows: "On the morning of March 5, 1890, at about 7 o'clock, William Cavanagh, the complainant, was returning from an all-night vigil by the sick-bed of his brother-in-law, who lived in Thirty-Second street. As he passed down Seventh avenue, he stopped at a saloon on the south-west corner of Twenty-Seventh street and Seventh avenue, at the door of which saloon a woman accosted him, and asked him to give her a glass of beer. At this time complainant saw the defendants, Ryan and McElroy, together in the street. The woman and the complainant went into the saloon, and withdrew into a little room used for 'ladies,' where they remained drinking from a quarter to half an hour, when the woman disappeared, leaving the complainant alone. He then went out of the little room into the saloon, and as he did so saw the defendants together in a corner of the saloon. As the complainant was about leaving the saloon by the Twenty-Seventh street door, the defendant Ryan 'grabbed' the complainant by the collar, saying, 'I want that watch,' and held him up against the jamb of the door, and took the watch from his person. While this was being done by defendant Ryan, the defendant McElroy was standing right behind defendant Ryan; Ryan remarking, as he took the watch from complainant, 'I got it.' The defendants then 'skipped away,' and hid together in a closet in the saloon. The complainant then went back into the saloon, and told the proprietor that his watch had been taken by 'these men,' and that 'they'

were in his place. ·The proprietor told complainant to keep still, and he would get him his watch. The watch was in Ryan's possession, and was given up by him in the saloon, and· returned to the complainant in the saloon. When the proprietor of the saloon learned that a robbery had been committed, defendants, Ryan and McElroy, were together in the saloon, and remained in the saloon together for five or ten minutes after the complainant had left. The defendants had a drink together before they went out. The complainant went to the station-house before he went to his home. He reached the station-house about 9 o'clock, and Officer Logan at once set out to arrest the defendants, and found them about 2 o'clock of the same day together at a liquor store, where he arrested them. The next morning the complainant appeared· against them at court, and identified the defendants ' without hesitation.'" At the conclusion of the testimony the counsel for the defendants asked the court to advise the jury to acquit McElroy, which the court declined to do. No exception was taken to this ruling.

It is claimed upon the part of the appellants that, as the complainant was drunk at the time he was robbed, it was not sufficient to convict upon his evidence alone. It is admitted that he lost his watch, and that Ryan had it; but it seems to be urged that, because of his immoral conduct in stopping at this saloon to carouse with a strange woman, whom he had picked up at 7 o'clock in the morning, he was a proper subject for the operations of these desperadoes. It is further urged that as from the complainant's evidence alone it appears that violence was used by Ryan in getting possession of the watch, and that, as he· was drunk, no reliance should be placed upon his testimony, and the defendants should have been acquitted. Some point is made in regard to the want of statement upon the part of the complainant that Ryan had ·taken his watch when he first made his complaint to the keeper of the saloon that he had lost his watch, and that it was only because of the suggestion of the bar-keeper that it was ascertained that Ryan had it. But the fact was undisputed that Ryan did have the watch, and that it was returned to the complainant, whether from the hands of the proprietor of the saloon or from Ryan himself is not particularly material. These two defendants were undoubtedly in the saloon at the time this watch was lost, and also at the time it was returned. The circumstances of the case clearly corroborate the statement of the complainant, and there is not the slightest particle of evidence tending to contradict anything he said as to the manner in which the watch was lost; and his subsequent action in going to the police station ·seems to indicate certainly a belief upon his part that the watch had been taken under the circumstances testified to by him. If his story was true, it it clear that the watch was taken from him ·by Ryan through violence, which complies with the definition of "robbery." As to the sufficiency of the evidence connecting McElroy with the offense, it seems to be sufficient to say that these two men were together; that while Ryan was committing the offense McElroy was standing by, giving him the assistance of his presence; and, as soon as Ryan declared that he had got it, they both fled, and hid together in a closet, showing a knowledge on the part of McElroy of what Ryan intended to do; and that he was present, ready to afford such assistance as might be necessary in order to accomplish the common purpose. It has long been settled that, to constitute one a principal in felony, he must be present at the commission of it, but that he need not be so near as to be an eye and ear witness of the criminal act; that his presence may be constructive, and that constructive presence is made out when it is shown that he acted with another in the pursuance of a common design; that he acted at one and the same time for the fulfillment of the same preconcerted end, and was so situated as to be able to give aid to his associate with a view to insure the success of the common enterprise. *McCarney* v. *People*, 83 N. Y. 413. But this aid and participation need not amount to more than watching to prevent a sur-

prise to his companions, or remaining at a convenient distance to favor their escape, or being in a situation to render assistance if necessary, the knowledge of which would be calculated to inspire confidence in his comrade. Persons are said to be aiding and abetting the party committing a crime, if by their presence they encourage him in the commission of it. It seems to be clear that the presence of McElroy, under the circumstances, was an encouragement and intended to be an encouragement to Ryan; that he was there intending to afford assistance, if necessary; that he was there knowing what Ryan intended to do, and, as soon as he announced that he had succeeded in doing it, they both left together. They had been confederating together before the commission of the crime, confederating together at the time of the commission of the crime, and confederating together subsequent to the commission of the crime. The attention of the court is directed to the fact that the jury accompanied their verdict against McElroy with a recommendation to mercy. But this in no way showed that the jury, under the instructions of the court, had any doubt in regard to the guilt of McElroy. They probably thought, because he did not actually participate in the use of violence, that he was entitled to more consideration than the desperado who had actually done the work. The evidence seems to have been amply sufficient to justify the jury in their conclusion that McElroy was an associate of Ryan, and that Ryan obtained possession of this watch by violence. The judgment should be affirmed.